E-FILED
Wednesday, 12 March, 2008  01:27:01 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DYNETTA COLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-3089 |
| | ) | |
| STATE OF ILLINOIS, OFFICE OF | ) | |
| GOVERNOR ROD BLAGOJEVICH, | ) | |
| CORY VERBLEN, JAY BROWN, | ) | |
| and EMILY MONTGOMERY, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendants' Motion for Summary Judgment (d/e 16).  Plaintiff Dynetta Cole is a former employee of the Office of Illinois Governor Rod Blagojevich.  After her employment was terminated, Cole filed a three-count Complaint (d/e 1) against the Governor's Office and three individual managers.  Defendants assert that they are entitled to summary judgment on all of Cole's claims.  For the reasons set forth below, the Motion for Summary Judgment is allowed.

BACKGROUND

Cole was employed by the Governor's Office of Citizens Assistance (GOCA) from October 2004 until December 2005.  GOCA has staff in both Chicago and Springfield and is responsible for receiving telephone calls, mail, faxes, e-mails, and other correspondence directed to the Office of Illinois Governor Rod Blagojevich.  Defendants' Memorandum of Law in Support of their Motion for Summary Judgment (d/e 17) (Defendants' Memorandum), p. 3, Undisputed Material Fact No. 2; Plaintiff's Memorandum of Law in Opposition to Summary Judgment (d/e 23) (Plaintiff's Opposition), p. 2 (conceding Defendants' Undisputed Material Fact No. 2).[1]  Cole was hired in October 2004 as a receptionist; however, as time progressed, her duties were expanded to include reading and logging correspondence, copying and filing mail, writing letters, and conducting child support casework.  Defendants' Memorandum, p. 4, Undisputed Material Fact Nos. 10, 14; Plaintiff's Opposition, p. 2 (conceding Defendants' Undisputed Material Fact Nos. 10, 14).  Defendant Cory

---

[1]The Court notes that Plaintiff's Opposition is internally inconsistent and, as a result, fails to comport with Local Rule 7.1(D)(2)(b).  For example, several of the facts deemed undisputed on page 2 of the Opposition are later contested.  The Court will view the evidence in the light most favorable to Plaintiff and will not deem facts conceded that are expressly contested elsewhere in the Opposition.

Verblen became the Director of Correspondence for GOCA in January 2005. Defendant Emily Montgomery was the Deputy Director of Correspondence until July 2005, at which time she was replaced by Defendant Jay Brown. Verblen worked out of GOCA's Chicago office while Montgomery and Brown worked in the Springfield office. Defendants' Memorandum, p. 3, Undisputed Material Fact Nos. 4-6; Plaintiff's Opposition, p. 2 (conceding Defendants' Undisputed Material Fact Nos. 4-6). At all relevant times, Cole reported to the Deputy Director of Correspondence. Defendants' Memorandum, p. 4, Undisputed Material Fact No. 11; Plaintiff's Opposition, p. 2 (conceding Defendants' Undisputed Material Fact No. 11).

Defendants assert that, prior to November 2005, there were complaints that Cole's work attendance was sporadic, that she argued with co-workers, and that she was rude and inattentive to constituents who contacted GOCA. Defendants' Memorandum, p. 4, Undisputed Material Fact No. 15. Cole disputes this, focusing mainly on the attendance issue. Plaintiff's Opposition, p. 3-4. Defendants assert that Cole had attendance problems prior to November 2005. For example, Brown testified that, approximately three times in October 2005 Cole arrived at work one to two

hours late and had not informed him in advance of her reason for being late. <u>Defendants' Memorandum</u>, Attachment 2, <u>Deposition of Jay Brown (Brown Dep.)</u>, p. 34.  Cole avers that she was never late to work without informing her supervisors and receiving permission, and at this point, the Court must view the evidence in the light most favorable to Cole.  <u>Plaintiff's Opposition</u>, Ex. 1, p. 95, <u>Affidavit of Dynetta Cole (Cole Aff.)</u>, ¶ 3.  Cole concedes that Verblen addressed attendance issues with her on several occasions; however, Cole asserts that each occasion was resolved amicably after it was revealed that she had informed Brown of her whereabouts and he had not relayed the information to Verblen.  <u>Defendants' Memorandum</u>, Attachment 4, <u>Deposition of Dynetta Cole held April 23, 2007</u>, p. 125-128.

In a similar vein, in October 2005, Cole requested approval from Verblen to leave work an hour and a half early on Tuesdays and Thursdays to pick up her daughter.  <u>Plaintiff's Opposition</u>, Ex. 1, p. 32.  Verblen responded by e-mail as follows:

> I'm sorry to be so blunt about this, but you either need to make alternate arrangements for your daughter on those days, or find another job that would allow [you] to do this.  Working in the governor's office does not allow you the flexibility to leave an hour and a half early two days a week.  I just can't budge on this Dynetta.  We need to be able to depend on you, and this is not acceptable.  Is there anyone else that can pick her up on those

days?

Id.  Cole then made other arrangements for her daughter's care.  Id.

Cole also asserts that Defendants have failed to identify specific instances of other misconduct or poor performance prior to November 2005.  With respect to the issue of constituent complaints, Verblen testified that, beginning in approximately March 2005, he received approximately ten to fifteen constituent complaints about Cole.  Defendants' Memorandum, Attachment 1, Deposition of Cory Verblen (Verblen Dep.), p. 49-51.  According to Verblen, he responded by verbally counseling Cole. Id., p. 51-52.  Cole avers that Verblen never told her that he had received complaints that she was rude to constituents.  Cole Aff., ¶ 5.  She does not assert, however, that there were no complaints of this nature.

With respect to co-worker issues, Brown testified that other GOCA employees, specifically Lexi Franz, Alexi Madden, and Ryan Dockerty, complained to him about Cole.  Brown Dep., p. 15.  According to Brown, Franz spoke to him frequently about Cole beginning in July 2005, voicing concern that, due to attendance problems and poor work performance, Cole was not pulling her weight at the office, thus increasing the work required of the other employees.  Id., p. 16-19.  Brown further testified that

5

beginning in September 2005, Madden began to complain to him about Cole's work being pushed off on other employees and stated that she believed Cole should be fired.  Id., p. 20-21.  According to Brown, in November 2005, Dockerty began complaining frequently about Cole, stating that the workload was becoming too much on the other employees. Id., p. 22.  Dockerty suggested that management look to find a replacement for Cole.  Id.  Brown also stated that he received complaints about Cole's work from individuals who "worked through" the GOCA, including individuals from the Chief of Staff's office, and office visitors.  Id., p. 23-26. According to Brown, he dealt with these complaints in face-to-face meetings with Cole and in telephone conference calls with himself, Verblen, and Cole. Id., p. 26-27.

As previously noted, Cole was hired as a receptionist for GOCA.  Cole testified that, when she was hired, she was promised that if she learned the procedures and policies she would be promoted.  Defendants' Memorandum, Attachment 3, Deposition of Dynetta Cole held April 23, 2007, p. 33-34.  By December 6, 2004, Cole had achieved the title "state service representative."  Id., p. 36-37.  However, Cole testified that, by May 2005, she was demoted to a position that did primarily copying work, and

she no longer did casework.  <u>Defendants' Memorandum</u>, Attachment 4, <u>Deposition of Dynetta Cole held April 23, 2007</u>, p. 101-02, 111.  According to Cole, approximately two weeks later, she was again demoted.  Cole testified that she was no longer allowed to touch any mail that came into the office and her duties included answering phones, filing, and handling faxes.  <u>Id</u>., p. 112-113.  By October 28, 2005, Cole's title was listed again as "receptionist."  <u>Defendants' Memorandum</u>, Attachment 3, <u>Deposition of Dynetta Cole held April 23, 2007</u>, p. 39.  Cole asserts that these demotions resulted after she refused to shred a piece of campaign mail that arrived at GOCA.

On November 10, 2005, Cole was involved in an automobile accident during her lunch break.  <u>Defendants' Memorandum</u>, p. 10, Undisputed Material Fact No. 59; <u>Plaintiff's Opposition</u>, p. 2 (conceding Defendants' Undisputed Material Fact No. 59).  Cole was hospitalized following the accident, but does not recall whether she remained in the hospital overnight.  <u>Defendants' Memorandum</u>, Attachment 6, <u>Deposition of Dynetta Cole held May 1, 2007</u>, p. 260-61.  At some point after she returned home from the hospital, Brown telephoned Cole and asked her to come into the office to discuss the Family Medical Leave Act (FMLA) and how long she would

7

be out of the office as a result of the injuries she had sustained in the accident.  Id.; see also FMLA, 29 U.S.C. § 2601 et seq.

On or about November 15, 2005, Cole met with Verblen, Brown, and Montgomery, who had become the Benefits Administrator for the Governor's Office.  Cole was given the necessary FMLA forms so that she could certify her need for leave.  Defendants' Memorandum, p. 10, Undisputed Material Fact No. 60; Plaintiff's Opposition, p. 2 (conceding Defendants' Undisputed Material Fact No. 60).  Defendants have presented a copy of a FMLA health care provider certification signed by Nicole Florence, M.D., on November 15, 2005, and Cole on November 19, 2005. Defendants' Memorandum, Attachment 8, p. 27-29, Defendants' Ex. 23. The certification asks the health care provider to "State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity if different)." Defendants' Memorandum, Attachment 8, p. 27, Defendants' Ex. 23, p. 1 (internal footnote omitted).  The form expressly defines "incapacity" as the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." Id. n. 2.  In response, Dr. Florence indicated "11/10

thru 11/27." <u>Defendants' Memorandum</u>, Attachment 8, p. 27, Defendants' Ex. 23, p. 1.  The record also contains a copy of a form entitled "Employer Response to Employee Request for Family or Medical Leave," dated November 18, 2005.  <u>Defendants' Memorandum</u>, Attachment 8, p. 32, Defendants' Ex. 23.  The Employer Response is signed by Verblen and indicates that Cole informed the employer that she was in need of FMLA leave beginning on November 10, 2005, and that she expected the leave to continue "until on or about 12/2005." <u>Id</u>.

Defendants proffer that Cole's FMLA leave was to end on November 27, 2005.  Cole disputes this fact and, in support, has presented a copy of her time sheet for the week of November 28, 2005, which reflects that she was on FMLA leave from November 28 to December 2, 2005.  <u>Plaintiff's Opposition</u>, Ex. 1, p. 38.  At this stage, the Court must view the evidence in the light most favorable to Cole.

Cole returned to work on December 5, 2005.  According to Cole, Brown called her a couple days prior to December 5, 2005, and stated that she needed to come back to work because the work was piling up. <u>Defendants' Memorandum</u>, Attachment 6, <u>Deposition of Dynetta Cole held May 1, 2007</u>, p. 277-78.  Cole testified that she went to talk to her doctors

and they said that she could go back to work part-time on light duty.  <u>Id</u>.,
p. 278.  The record contains copies of notes from Dr. Florence and Michael
Paul Bova, M.D., both of whom released Cole to work as of December 5,
2005, but limited her to working half days through December 9, 2005.
<u>Plaintiff's Opposition</u>, Ex. 1, p. 25.  These notes are both dated December
5, 2005.  <u>Id</u>  When asked whether she went to work on the morning of
December 5, 2005, and then went to the doctors in the afternoon, Cole
responded that she did not remember.  <u>Defendants' Memorandum</u>,
Attachment 6, <u>Deposition of Dynetta Cole held May 1, 2007</u>, p. 279.  Cole
testified, however, that the doctors dated the notes on the date that they
wrote them.  <u>Id</u>., p. 280.

Cole's time sheet for the week of December 5, 2005 reflects the
following hours worked: 12/5/05, 9:00 a.m. to 12:45 p.m.; 12/6/05, 8:30
a.m. to 12:45 p.m.; 12/7/05, 8:30 a.m. to 12:45 p.m.; 12/8/05, 9:30 a.m. to
12:45 p.m.; and 12/9/05, 1:00 p.m. to 4:15 p.m.  <u>Defendants'</u>
<u>Memorandum</u>, Attachment 8, p. 22, Defendants' Ex. 22, p. 1.  According
to Cole, her normal starting time was 9:00 a.m., but Brown requested that
she start at 8:30 a.m., so she did on December 6 and 7, 2005.  Cole avers
that, on December 8, 2005, she had a doctor's appointment in the morning,

which she cleared with Brown in advance.  <u>Cole Aff.</u>, ¶ 6.  Cole also states that on December 9, 2005, she had a doctor's appointment, which she cleared in advance with Brown.  <u>Id</u>., ¶ 7.  According to Cole, Brown knew that she would be in the office at 1:00 p.m. that day.  <u>Id</u>

According to Brown, when he received the doctors' notes limiting Cole to part-time work, he considered the situation to be open-ended, although he did not think it would last more than one month.  <u>Brown Dep.</u>, p. 55-56. Brown testified that, in the beginning, Cole's part-time hours were not set to a specific time, but after a few days he told Cole that they needed to establish a firm time frame.  <u>Id</u>., p. 56-57.  Brown told Cole that he wanted her to work in the mornings.  <u>Id</u>

Cole's time sheet for the week of December 12, 2005, reflects the following hours worked:  12/12/05, 10:00 a.m. to 1:15 p.m.; 12/13/05, 9:00 a.m. to 11:30 a.m.; 12/14/05, 9:45 a.m. to 12:15 p.m.; 12/15/05, none; and 12/16/05, 12:30 p.m. to 4:15 p.m. <u>Defendants' Memorandum</u>, Attachment 8, p. 23, Defendants' Ex. 22, p. 2.  At 9:40 a.m. on December 14, 2005, Brown sent an e-mail to Cole as follows: "It's Wednesday at 9:40 am, where are you?  I haven't gotten a phone call from you.  I understand that you're going through a lot right now but this can't keep happening, this is the

11

second time this week." <u>Defendants' Memorandum</u>, Attachment 8, p. 33, Defendants' Ex. 24.  Cole responded by e-mail at 10:23 a.m. on December 14, 2005, as follows: "Jay, I was in a very bad car accident and it's been a week in my returning to work.  I apologize for any troubles I've caused to you the weather this morning showed how bad the storm was last night." <u>Id</u>.  Also on December 14, 2005, Cole informed Dr. Bova that she was having difficulty getting up in the morning and getting to work. <u>Defendants' Memorandum</u>, Attachment 14, <u>Deposition of Michael Bova, M.D.</u>, Ex. 5.  As a result, Dr. Bova directed that Cole's work hours should be between 11:00 a.m. and 2:00 p.m.  <u>Plaintiff's Opposition</u>, Ex. 1, p. 29.

On December 16, 2005, Brown left the office at 11:00 a.m.  Cole had not yet arrived at work, and Brown contacted Verblen to inform him of Cole's absence.  Verblen sent Cole an e-mail directing her to call him when she arrived at work.  Cole concedes that this is "largely true," but states that she had a doctor's appointment on December 16, 2005, and that she cleared this appointment with Brown in advance and he approved her arriving at 12:30 p.m. on that day.  <u>Plaintiff's Opposition</u>, p. 14; <u>Cole Aff.</u>, ¶ 9.  Upon her arrival at work on December 16, 2005, Cole spoke to Verblen by phone and informed him that she had cleared the appointment with Brown.

Defendants assert that there was a conference call between Verblen, Brown, and Cole on December 16, 2005, during which Verblen expressed frustration with Plaintiff continually failing to inform management of occasions on which she would be absent from work or tardy.  <u>Defendants' Memorandum</u>, p. 13, Undisputed Material Fact No. 80.  Cole disputes the content of the call and testified that she does not recall if Brown was involved.  <u>Plaintiff's Opposition</u>, p. 15.  However, in her deposition, Cole testified that Verblen was "upset" during the call.  <u>Defendants' Memorandum</u>, Attachment 7, <u>Cole Dep. held May 1, 2007</u>, p. 312.  Cole testified that Verblen told her that he would get back with her on what they were going to do.  <u>Id</u>.

Brown testified that following the conference call with Cole, he and Verblen had another telephone conversation to discuss how to handle the situation with Cole.  <u>Brown Dep.</u>, p. 60.  Brown stated that he definitely wanted Verblen to take disciplinary action against Cole at this point.  According to Brown, he believed that Cole should be fired, but he did not communicate this to Verblen.  <u>Id</u>., p. 61.  At the conclusion of that call, Verblen decided to contact the Chief of Staff for advice on how to proceed.  <u>Id</u>., p. 60.  Ultimately, it was determined that the best course of action

would be to create a performance improvement plan for Cole.  Id., p. 61-62. Verblen drafted the document with input from Brown.  Id.

Cole's time sheet for the week of December 19, 2005, reflects the following hours worked: 12/19/05, 9:15 a.m. to 12:30 p.m.; 12/20/05, none; 12/21/05, 11:00 a.m. to 2:30 p.m.; 12/22/05, 11:00 a.m. to 2:30 p.m.; and 12/23/05, 11:00 a.m. to 2:30 p.m.  Defendants' Memorandum, Attachment 8, p. 24, Defendants' Ex. 22, p. 3.  On December 19, 2005, Cole sent Verblen a fax which included a sheet detailing doctor's appointments on December 9, 2005, and a scheduled follow-up on December 20, 2005. Defendants' Memorandum, Attachment 8, p. 36-37, Defendants' Ex. 27. The fax cover sheet indicated that Cole was sending the document per the December 16, 2005, conversation and stated that the upcoming appointment was in the morning.  Id.

On December 22, 2005, a meeting was held with Cole, Verblen, and Brown.  Cole was given the performance improvement plan, which was to continue for fifteen working days at which point Cole's progress would be reassessed. Plaintiff's Opposition, Ex. 1, p. 91-92.  The plan identified three areas for improvement – attendance, attitude, and job performance.  Id. With respect to attendance, the plan indicated that Cole needed to be more

consistent with her time and more effective in communicating to her superiors the exact days and time she would be out of the office.  The suggested solution was as follows:

> on a daily and weekly basis, Ms. Cole should write out her own schedule and provide a copy to both Mr. Verblen and Mr. Brown so there is no confusion about when she will be present and when she will be absent.  Any derivation [sic] from that ongoing schedule must be brought to Mr. Verblen and Mr. Brown's attention in a timely fashion so appropriate arrangements in the office can be made.

Id., p. 91.  With respect to attitude, the plan indicated that there had been complaints about Cole being rude and unhelpful.  The suggested solution was for Cole "to become more aware of her tone when dealing with both constituents and staff members" and for Cole to work on becoming a better listener.  Id., p. 92.  With respect to job performance, the plan noted that "in general, Ms. Cole completes the duties she is assigned in a satisfactory manner.  However, during this period that Ms. Cole is only working three hours per day, it is especially important that she keep up on her filing duties and limit the personal issues that she faces during work hours."  Id.

During the December 22, 2005, meeting, Cole was asked to sign the improvement plan and was told that she would be discharged if she did not. Defendants' Memorandum, p. 13, Undisputed Material Fact No. 84;

Plaintiff's Opposition, p. 15.  Cole testified that she asked if she could respond to the document and was told that she could but that it was not going to make a difference.  Defendants' Memorandum, Attachment 7, Cole Dep. held May 1, 2007, p. 311.

Cole responded in a memorandum dated December 28, 2005. Plaintiff's Opposition, Ex. 1, p. 93.  Cole stated her belief that three hours a day for fifteen days was not adequate time to evaluate her performance. Cole asked that Verblen consider ongoing training for GOCA staff in the areas of multiculturalism, conflict resolution, sensitivity, stress management, and effective communication.  Id.  After Cole presented her memorandum, a telephone conference was held with Cole, Verblen, and Brown.  Verblen informed Cole that he respected her input, but that it did not change what he had laid out.  Brown Dep., p. 67-68.  Verblen indicated that if Cole was unwilling to go along with the improvement plan, she would be let go.  Id., p. 68.  Cole refused to sign the performance improvement plan. Defendants' Memorandum, p. 14, Undisputed Material Fact No. 91; Plaintiff's Opposition (failing to dispute Defendants' Undisputed Material Fact No. 91).  Cole accepted her termination, cleaned out her desk, and left. Brown Dep., p. 68-69.  Cole's final time sheet indicates that she worked

from 11:00 a.m. to 12:30 p.m. on December 28, 2005.   Plaintiff's Opposition, Ex. 1, p. 33.

ANALYSIS

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact and that judgment as a matter of law is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  When a properly supported motion for summary judgment has been made, the party opposing summary judgment may not merely rest on the pleadings but must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  "A party must present more than mere speculation or conjecture to defeat a summary judgment motion."  Liu v. T & H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999). The Court must consider the evidence in the light most favorable to the

non-moving party, here the Plaintiff, and draw all reasonable inferences in her favor.  See Anderson, 477 U.S. at 255.

A.    Cory Verblen, Jay Brown, and Emily Montgomery

Defendants Verblen, Brown, and Montgomery are named in Count II of Plaintiff's Complaint, which alleges that these three individuals violated Cole's First Amendment Rights.   Defendants Verblen, Brown, and Montgomery have filed a properly supported request for summary judgment in their favor.  In response, Cole indicates that she wishes to abandon her First Amendment claims against Verblen, Brown, and Montgomery. Plaintiff's Opposition, p. 2.  Therefore, the Motion for Summary Judgment is allowed as it relates to Defendants Verblen, Brown, and Montgomery.

B.    State of Illinois, Office of Governor Rod Blagojevich

Count I of Cole's Complaint alleges that the Governor's Office interfered with her rights under the FMLA and retaliated against her for exercising her FMLA rights.  29 U.S.C. § 2601 et seq.  Count III of the Complaint alleges that the Governor's Office violated Cole's rights under the Illinois State Officials and Employees Ethics Act.  5 ILCS 430/15-5 et seq. The Governor's Office seeks summary judgment on each of these counts. Cole's Opposition indicates that she wishes to abandon her state law claims

alleged in Count III.  <u>Plaintiff's Opposition</u>, p. 2.  Therefore, the Court grants summary judgment in favor of the State of Illinois, Office of Governor Rod Blagojevich on Count III.

Turning to Count I, the Court notes that, while the Complaint alleges both interference with FMLA rights and FMLA retaliation, Cole's Opposition indicates that she does not claim "that she was not permitted to take FMLA leave but rather [that] she was retaliated against once she returned from her leave." <u>Plaintiff's Opposition</u>, p. 19.  The Court therefore limits its analysis to the FMLA retaliation theory.  The Court finds that Cole has abandoned any claim she may have stated concerning interference with her taking FMLA leave.

In addition to granting employees substantive rights, the FMLA protects employees from being discriminated or retaliated against for exercising FMLA rights.  29 U.S.C. §§ 2615(a)(2), 2615(b); 29 C.F.R. § 825.220(c); <u>see also</u> <u>Breneisen v. Motorola, Inc.</u>, 512 F.3d 972, 978 (7th Cir. 2008).  The Court evaluates a claim of FMLA retaliation in the same way as it would evaluate a claim of retaliation under other employment statutes, such as the ADA or Title VII.  <u>Buie v. Quad/Graphics, Inc.</u>, 366 F.3d 496, 503 (7th Cir. 2004).  In making out a charge of retaliation under the FMLA,

a plaintiff may proceed under the direct or indirect methods of proof. <u>Burnett v. LFW, Inc.</u>, 472 F.3d 471, 481 (7th Cir. 2006). Cole concedes that she cannot point to a similarly-situated employee who was treated differently; thus, she is proceeding under the direct method of proof on her claim. To avoid summary judgment, Cole must identify evidence sufficient to support a finding that her employer took materially adverse action against her because she used FMLA leave. <u>See</u> <u>Breneisen</u>, 512 F.3d at 979. If Cole's evidence is contradicted "the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse . . . action against the plaintiff even if he had had no retaliatory motive; in that event the defendant is entitled to summary judgment because he has shown that the plaintiff wasn't harmed by retaliation." <u>Burnett</u>, 472 F.3d at 481 (internal quotations and citation omitted).

It is uncontested that Cole's termination constituted a materially adverse action. Defendants assert that Cole can identify no evidence supporting a causal connection between her termination and her use of FMLA leave.

> There are two types of permissible evidence under the direct method: direct evidence and circumstantial evidence. The former "essentially requires an admission by the decision-maker

that his actions were based upon the prohibited animus."  The
latter is evidence that "allows a jury to infer intentional
discrimination by the decision-maker."

<u>Buie</u>, 366 F.3d at 503 (internal quotations omitted).  Cole fails to identify

any admission of retaliatory animus.  Cole, however, asserts that sufficient

circumstantial evidence exists from which a jury could infer retaliation.

According to Cole, retaliatory animus can be inferred based on comments

that her absences were negatively impacting the office, the fact that the

improvement plan addressed absenteeism, the fact that the Governor's

Office failed to follow its own procedures for documenting attendance

matters, statements by Verblen that Cole was performing satisfactorily, and

the timing of her termination.  The Court disagrees.

The Seventh Circuit requires Cole to put forth a "convincing mosaic"

of circumstantial evidence to show that her employer acted with

discriminatory intent.  <u>Walker v. Bd. of Regents of Univ. of Wis.</u>, 410 F.3d

387, 394 (7th Cir. 2005).  Cole has failed to do so.  It is undisputed that

Cole was allowed to take all of the FMLA leave and intermittent FMLA

leave that she requested.  The improvement plan did have a section

involving attendance; however, this section focused on communication and

consistency, and did not discuss the amount of time Cole was out of the

office.  Additionally, the record establishes that Verblen showed interest in Cole's communication and consistency related to attendance matters prior to November 2005, even assuming, as Cole contends, all of the situations were ultimately resolved amicably.  Furthermore, the section of the improvement plan dedicated to job performance expressly recognized that, during the time Cole was working limited hours, others in the office would need to assist with her duties.  The improvement plan required only that Cole work as efficiently as possible while she was in the office.

Cole further asserts that the Governor's Office failed to document any alleged attendance issues prior to November 2005, in violation of its internal policies.  However, at summary judgment, the Court views as true Cole's assertion that she did not have unexcused absences prior to November 2005.  This case is distinguishable from <u>Rudin v. Lincoln Land Community College</u>, upon which Cole relies heavily.  <u>Rudin</u>, 420 F.3d 712 (7th Cir. 2005).  Rudin involved the systematic abandonment of hiring policies together with statements by the chair of the screening committee that he was under pressure from the administration to recommend a minority candidate for the open position.  In the instant case, the record is clear that the personnel rules of GOCA were flexible.

Cole asserts that the timing of her termination is sufficient to establish retaliation.  Clearly, Cole was not asked to accept an improvement plan prior to exercising her FMLA rights.  Suspicious timing alone, however, is rarely sufficient to avoid summary judgment.  Culver v. Gorman & Co., 416 F.3d 540, 546 (7th Cir. 2005); see also Wyninger v. New Venture Gear, Inc., 361 F.3d 965, 981 (7th Cir. 2004) ("There is no bright-line rule as to the amount of evidence necessary to survive summary judgment under the direct method, but it is clear that 'mere temporal proximity' is not enough to establish a genuine issue of material fact.").  This is not a case of sudden dissatisfaction with an employee's performance following the exercise of a protected right.  Cole asserts that Verblen was generally satisfied with her job performance.  She points to two written statements Verblen made that she was performing satisfactorily.  These statements, however, must be viewed in context.  The first was made in September 2005, after Cole requested a transfer to the mail room team.  Verblen denied the request, "in the interest of not shaking things up too much," explaining that moving Cole to the mailroom every morning would require other employees to switch positions as well.  Plaintiff's Opposition, Ex. 1, p. 95.  Cole responded by e-mail that she "never should have suggested" the change.  Id.

23

Verblen assured Cole that she "had absolutely every right to suggest it." Id. Verblen repeated his rationale for denying the request and concluded, "Please don't take this as a slight on you.  I know you would do a good job in the mailroom, but this just isn't the right time.  Keep up the good work at what you're doing, and we'll see what we can do in the future.  This is definitely something I will keep in mind." Id.

The second statement was included in the improvement plan.  With respect to job performance, the improvement plan noted "in general, Ms. Cole completes the duties she is assigned in a satisfactory manner. However, during this period that Ms. Cole is only working three hours per day, it is especially important that she keep up on her filing duties and limit the personal issues that she faces during work hours. . . . it is her responsibility to complete as much per day as possible to alleviate the strain on her fellow employees." Plaintiff's Opposition, Ex. 1, p. 92.  Taken in context, neither of these statements supports a finding that Verblen displayed a sudden dissatisfaction with Cole's performance following her exercise of FMLA rights.  Moreover, as set forth above, even viewing the evidence in the light most favorable to Cole, Verblen's interest in Cole's attendance predated her FMLA leave.

Taken as a whole, Cole's circumstantial evidence does not create a reasonable inference of retaliation.  There is nothing Cole can point to that reasonably suggests that her termination was motivated by anything other than her refusal to accept the improvement plan.  Thus, Cole fails to identify evidence sufficient to support a finding that her use of FMLA leave was a motivating factor in the adverse action against her.  Summary judgment is, therefore, appropriate on Count I.

Furthermore, even if Cole were able to identify sufficient circumstantial evidence from which a jury could infer retaliation, the Governor's Office would nevertheless be entitled to summary judgment because the record evidence establishes that Cole would have been fired even absent her use of FMLA leave.  Cole characterizes the Governor's Office's justification for terminating her as "a continuing pattern of poor performance and attendance problems."  Plaintiff's Opposition, p. 33.  It is clear from the record, however, that Cole was terminated due to her failure to accept the improvement plan.  Cole agrees that she was presented with the plan and that she refused to agree to it, knowing that failure to do so would result in her termination.  Cole argues that her conduct did not justify placing her on the improvement plan.  The Seventh Circuit, however,

has long instructed that courts should not assume the role of a "super-personnel department reviewing the business decisions of. . . employers." <u>Bahl v. Royal Indemnity Co.</u>, 115 F.3d 1283, 1292 (7th Cir. 1997). The unrebutted record evidence clearly establishes that Verblen would have terminated Cole's employment even if he had no retaliatory motive. Summary judgment in favor of the Governor's Office on Count I is appropriate on this basis as well. <u>See</u> <u>Stone v. City of Indianapolis Pub. Utils. Div.</u>, 281 F.3d 640, 644 (7th Cir. 2002).

THEREFORE, as set forth above, Defendants' Motion for Summary Judgment (d/e 16) is ALLOWED. Summary judgment is entered in favor of the State of Illinois, Office of Governor Rod Blagojevich and Defendants Verblen, Brown, and Montgomery against Plaintiff Dynetta Cole. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER:  March 11, 2008

FOR THE COURT:

        s/  Jeanne E. Scott
        JEANNE E. SCOTT
        UNITED STATES DISTRICT JUDGE